

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00448-CR

Vincent Andrew **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2010CR1605
Honorable Melisa Skinner, Judge Presiding

Opinion by: Catherine Stone, Chief Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: October 9, 2013

AFFIRMED

Vincent Andrew Lopez was convicted by a jury of evading detention. On appeal, Lopez challenges the sufficiency of the evidence to support the jury's verdict and contends the trial court committed reversible error through a comment made during voir dire and by polling the jury sua sponte. We affirm the trial court's judgment.

### SUFFICIENCY OF THE EVIDENCE

A person commits the offense of evading detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to detain him. TEX. PENAL CODE ANN. § 38.04(a)

(West Supp. 2012). Lopez contends the evidence is insufficient to show that he was intentionally fleeing from the officer in the instant case because the evidence established that he was unaware that the officer was attempting to detain him.

"When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id*. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Moreover, juries are permitted "to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Id*. at 15. A reviewing court determines if a jury's inferences are reasonable "based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. at 17. "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt*, 368 S.W.3d at 525-26.

Viewing the evidence in the light most favorable to the verdict, Officer Richard Casillas was on patrol with a field training officer, Officer David Brinkman, during the end of his rookie training. At approximately 5:00 a.m., the officers were approaching a highway when they observed two vehicles on the highway traveling at a high rate of speed. The vehicles appeared to be racing. The headlights of the vehicle Lopez was later identified as driving were off. Officer Casillas accelerated to a speed of approximately 100 miles per hour in an effort to catch the vehicles when Lopez's vehicle exited the highway. As Lopez exited the highway, Lopez turned

on his headlights. As soon as they caught up to Lopez, either Officer Casillas or Officer Brinkman activated the emergency lights and siren to initiate a traffic stop. When Lopez failed to stop, Officer Brinkman began "chirping the siren" to make sure they attracted Lopez's attention. When Detective Brinkman realized Lopez did not intend to stop, he stopped chirping the siren and allowed it to run continuously. Lopez continued traveling through a residential area making several turns before pulling into his driveway. Officer Casillas estimated that he was behind Lopez for one and one-half minutes or approximately 0.6 miles with his lights and siren activated before Lopez pulled into his driveway.

From the officers' testimony that their lights and siren were activated for 0.6 miles or approximately one and one-half minutes, the jury could reasonably infer that Lopez was aware the officers were attempting to detain him but intended to flee to the driveway of his house. Although Lopez testified that he did not see the lights or hear the siren, the jury, as the sole judge of the witnesses' credibility, could have disbelieved him. *See Merritt*, 368 S.W.3d at 525. Moreover, although the officers agreed that Lopez was not accelerating away from them or driving recklessly after he exited the highway, "fleeing" is "anything less than prompt compliance with an officer's direction to stop," and "fleeing slowly is still fleeing." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.); *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.). Lopez's first issue is overruled.

### VOIR DIRE COMMENT

In his second issue, Lopez contends a comment made by the trial judge during voir dire was reversible error. Acknowledging that no objection was made to the comment, Lopez cites *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality opinion), to contend the error was not waived by the failure to object because the trial judge's comment damaged the presumption of innocence which was "a fundamental error of constitutional dimension." The State notes that the

Texas Court of Criminal Appeals issued an opinion after Lopez's brief was filed concluding that "the *Blue* decision has no precedential value." *Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013). Although acknowledging that the plurality opinions in *Blue* could have persuasive value like a concurring opinion, the court held that the opinions in *Blue* did not support a reversal in *Unkart* because the circumstances "differ[ed] significantly in several respects from the circumstances in *Blue*." *Id*.

In *Blue*, "at the beginning of the jury selection process, the trial judge apologized to a group of perspective jurors for their long wait." 41 S.W.3d at 130. In making the apology, the trial judge informed the jurors that the defendant was still deciding whether to accept the State's plea offer or go to trial. *Id*. The trial judge further stated that she preferred the defendant to plead, and "we were all trying to work toward that and save you time and cost of time." *Id*. The plurality in *Blue* determined that "the trial judge's remarks vitiated the defendant's presumption of innocence." *Unkart*, 400 S.W.3d at 99.

In *Unkart*, "the trial judge said that he personally would want to testify if accused of a crime but admonished the prospective jurors that others might have a different perspective, that a defendant could have good reasons not to testify that were unrelated to guilt, and that the law prohibited the jurors from holding a defendant's failure to testify against him." 400 S.W.3d at 96. The court distinguished *Blue* on several grounds. *Id*. at 101-02. First, the court noted that the trial judges' attitudes in the two cases were considerably different. *Id*. at 101. In *Blue*, the judge's remarks "were an expression of exasperation and impatience" and "essentially faulted the defendant for failing to quickly give up his right to a jury trial and accept a plea offer," while the remarks by the trial judge in *Unkart* "were made with the manifest intent to benefit the defendant and to protect his rights" by "hammer[ing] home to jurors that they should not hold a defendant's failure to testify against him." *Id*. In addition, "the trial judge in *Blue* conveyed information about

the case that the jurors would not have otherwise known, while the trial judge in [*Unkart*] did not." *Id*. "Third, the trial judge in *Blue* told the jurors what he preferred the defendant to do, but the trial judge's remarks in [*Unkart*] did not." *Id*. "Fourth, the trial judge in [*Unkart*] gave the jurors a logical reason to disregard his expressed personal preference," but no similar discussion occurred in connection with the trial judge's expressed preference that the defendant plead in *Blue*. *Id.* at 101-02. Finally, the trial judge in [*Unkart*] "emphatically instructed the jurors about what the law required" explaining that "if they agreed with his own preference about testifying, they were required to set that opinion aside and follow the law." *Id*. at 102. On the other hand, no instructions were given in *Blue* that "could be construed as telling the jury to disregard the trial judge's comment" about the plea discussions or the trial judge's preference that the defendant accept the plea. *Id*. After distinguishing *Blue*, the court in *Unkart* held that the appellant waived any error by failing to object and request an instruction to disregard because any residual harm "would have been cured by a timely instruction to disregard the specific comments that appellant found objectionable." *Id*.

In this case, during the trial judge's general remarks to the venire panel, the trial judge stated the following in explaining the type of criminal case to be heard:

> In this case, I can tell you Mr. Lopez is charged with the offense of evading arrest or detention. And really simply what that is, is it is a state jail felony offense in the State of Texas. At the time that this case was committed, to have an officer try to pull you over while you were in your vehicle and you just fail or refuse to stop, knowing that there is an officer attempting to pull you over. That's really simply what it is. And it's a state jail felony offense.

Lopez contends the trial court's reference to "the time that this case was committed" constituted fundamental error because the comment "tainted the presumption of innocence, and instructed in [sic] the jury, very early on that an offense was committed by Mr. Lopez." In evaluating Lopez's complaint, we must examine the remark in context.

Immediately after this comment, the trial judge informed the jurors that all citizens, including those accused of crimes, have constitutional rights. The trial judge then explained her role during the trial as follows:

> It's going to be my job during the course of the trial to give you the law in the case and to make sure that everybody in here follows the law. That's my job. I'm not the factfinder. There will be 12 of you who are selected to sit on this jury and make a decision based on the evidence and the evidence alone as to whether or not the State of Texas has shouldered what we call their burden of proof and proven beyond a reasonable doubt that Mr. Lopez is guilty of the offense.

In explaining the reason the venire panel was so large when only 12 jurors would be selected, the trial judge stated:

> So we pack all these people in here why? We only need 12 people. Well, because we need 12 people who are going to be the fairest 12 people. The people who can make a decision — what did I say? Based only on the evidence that they hear from the witness stand and from no other place.

In further explaining the process of voir dire and each side's opportunity to speak with the venire panel about the legal issues that they think will apply to their case, the trial judge emphasized:

> Because I don't know the facts. Did you all know that? That the judges don't know the facts on cases that they hear until you hear them, if you're on the jury. And I see some people doing this. But we don't. We don't know. Unless there's been some other previous motion or some proceeding in the courtroom where the facts are revealed. I have know [sic] idea what the facts are. I hear them when you hear them.
>
> But it's not my decision, it's not my duty to figure out what the facts are, what's true and what's not true. It's the jury's duty. Because I'm here to give you the law and nothing else.

Reviewing the challenged comment in context, the trial judge's remark in this case, unlike the remarks in both *Blue* and *Unkart*, was ambiguous. The trial judge did not remark on her personal preference regarding a defendant testifying or pleading guilty. Instead the judge made reference to the time when "this case was committed." Although Lopez contends that the remark was a comment by the judge about his guilt, the remarks following the comment reveal the remark

could not have been intended by the judge as such because the judge informed the jury that she did not know the facts of the case and determining which facts were true was their job, not hers. More likely, the judge intended to refer to the time that the underlying events occurred. Similar to the trial judge in *Unkart*, the trial judge in this case "emphatically instructed the jurors about what the law required" in their review of the evidence in the case and their decision regarding its outcome. Given the ambiguity in the trial judge's comment and the comments immediately following, we hold that any possible harm from the comment would have been cured by an instruction to disregard the comment. *See Unkart*, 400 S.W.3d at 102. Accordingly, we hold the trial judge's comment did not constitute fundamental error, and Lopez was required to preserve this complaint by "a timely request for relief at the trial level." *Id*. at 98.

### POLLING THE JURY

In his final issue, Lopez contends the trial court erred in polling the jury because only the defendant and the State have the right to have the jury polled under article 37.05 of the Texas Code of Criminal Procedure. Lopez argues that the trial court's only option when the foreman dissented after the verdict was read was to send the jury back for further deliberation.

After the jury foreperson sent a note to the trial judge that the jury reached a verdict, the jury was brought into open court. The trial judge asked the jury foreperson if the verdict was unanimous, and he responded that it was. After being handed the verdict form, the trial judge stated that it was in proper form and read the verdict form stating that the jury found Lopez not guilty. The trial judge then asked whether either side wished to have the jury polled, and the State responded "no." The record then reflects that the "jurors" told the court, "That's not what we wrote." After having the jury foreperson review the form, the trial court then polled the jury, and each juror responded that the not guilty verdict was not his or her verdict. The trial court then instructed the jury to continue deliberations and to "return a verdict upon which you all agree."

After the jury retired for further deliberations, defense counsel objected, asserting the trial court did not have the right to poll the jury and requesting that the "judgment be entered as it was given." The judge then clarified for the record the events that had transpired as follows:

> THE COURT: After — I asked you [about polling the jury], is it not true that the foreperson of the jury indicated that the verdict that I read was not their verdict?
>
> [DEFENSE COUNSEL]: I — I do believe the jury spoke up, Judge.
>
> THE COURT: And all of the jurors were shaking their head and indicating to the Court, as well as verbally indicating to the Court, that it was not their verdict, was not that not correct?
>
> [DEFENSE COUNSEL]: Judge, I—
>
> THE COURT: I'm just asking you if that was not correct, for the record?
>
> [DEFENSE COUNSEL]: There was a reaction from the jury that perhaps it wasn't their verdict.
>
> THE COURT: And the foreperson made it very clear. And I asked him to come forward and look at the verdict form, did I not?
>
> [DEFENSE COUNSEL]: You did.
>
> THE COURT: Yeah.
>
> [DEFENSE COUNSEL]: I—
>
> THE COURT: Okay. I realize that you're making — that you're making your argument on the record. But I also want the record to very clearly reflect what went on here. And the fact that the Court had every indication from the reactions of the jurors that the verdict that was handed to the Court was not correct.
>
> [DEFENSE COUNSEL]: Judge, all I'm pointing out is that the State did not ask to have the jury polled.
>
> THE COURT: I get that. I understand that. But I want the record, myself, to be very clear as to what occurred in this courtroom. Because I think that there was a problem and I want it to be clear on the record what it was that we observed and what was seen.
>
> [DEFENSE COUNSEL]: Absolutely.
>
> THE COURT: Do you have any response, Mr. Molina [the prosecutor]?
>
> MR MOLINA: Well, just that the code doesn't prevent the Court from polling the jury. It just says upon request the State or – the request of the State or the defense the Court shall poll the jury.
>
> THE COURT: And I think the Court is obligated when the jury's reacting the way the jury reacted to the reading of the verdict, I think the Court is obligated. So let's leave it at that.

The court then expressly overruled defense counsel's objection and request.

As Lopez notes in his brief, this issue involves the interplay between articles 37.04 and 37.05 of the Texas Code of Criminal Procedure. Article 37.04 provides:

> When the jury agrees upon a verdict, it shall be brought into court by the proper officer; and if states that it has agreed, the verdict shall be read aloud by the judge, the foreman, or the clerk. If in proper form and no juror dissents therefrom, and neither party requests a poll of the jury, the verdict shall be entered upon the minutes of the court.

TEX. CODE CRIM. PROC. ANN. art. 37.04 (West 2006). Article 37.05 provides:

> The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer[s] in the negative, the jury shall retire again to consider its verdict.

TEX. CODE CRIM. PROC. ANN. art. 37.05 (West 2006).

In this case, article 37.04 clearly authorized the trial court to refuse to enter the verdict upon the minutes of the court because the record reflects that all of the juror dissented from the verdict. TEX. CODE CRIM. PROC. ANN. art. 37.04. Moreover, although article 37.05 expressly affords the State and the defendant the right to have the jury polled, it does not expressly preclude the trial court from polling the jury.

In *Jones v. State*, the appellant asserted on appeal that "the trial court erred in ordering the jury back to deliberate after they had originally signed the verdict form finding him 'not guilty.'" 511 S.W.2d 514, 515 (Tex. Crim. App. 1974). In reciting the facts in that case, the Texas Court of Criminal Appeals noted that "a show of hands" followed the trial court's reading of the verdict. *Id*. at 515-16. Although the opinion does not expressly state who requested the "show of hands," the court held that the trial court "properly requested further deliberations by the jury" when "the foreman dissented" after the verdict was read "and it was apparent that a mistake had been made." *Id*. at 517.

In *Webber v. State*, the trial court read the jury's verdict on punishment as assessing four years' confinement and informed the jurors that they were excused. 652 S.W.2d 781, 782 (Tex. Crim. App. 1983). Before any of the jurors left the courtroom, the trial court granted the

defendant's request for a ten-day continuance before sentencing, and immediately added that the jury's verdict form showed that the jury recommended the punishment be probated. *Id.* In response to the trial court's question as to whether the form reflected the jury's verdict, the foreperson stated that it was "not our verdict." *Id.* The opinion then states, "The court then noted the Foreman had signed the blank on the form showing that punishment had been probated and polled the jury." *Id.* The trial court then retired the jury for further deliberations, and the jury returned after two minutes with a verdict showing that the punishment was not to be probated. *Id.* From this opinion, it appears that the trial court polled the jury sua sponte. *See id.* Nevertheless, the Texas Court of Criminal Appeals held that the trial court did not err in retiring the jurors for further deliberations since no juror had left the courtroom, and affirmed the trial court's judgment. *Id.*

Although neither of these cases, nor any of the cases cited by the parties, directly addresses an issue challenging a trial court's decision to sua sponte poll the jury, they suggest that such an action may be permissible. *Cf. Cotton v. State*, No. 05-97-01992-CR, 2000 WL 233171, at *4 (Tex. App.—Dallas Mar. 2, 2000, no pet.) (noting trial court's polling of the jury sua sponte by asking for a show of hands accomplished same result as having each juror sign the verdict form) (not designated for publication). In this case, however, we need not definitely resolve the issue. Because the jurors dissented to the reading of the verdict, article 37.04 precluded the trial court from entering a judgment on the verdict. TEX. CODE CRIM. PROC. ANN. art. 37.04. Accordingly, the trial court did not err in denying defense counsel's request to enter a judgment on the erroneous verdict. Assuming, without deciding, that the trial court should simply have sent the jury back for continued deliberations without polling the jury, Lopez does not address how the polling of the jury affected his substantial rights. *See* TEX. R. APP. P. 44.2(b) (providing error that does not affect substantial rights must be disregarded). Lopez does not suggest the polling of the jury tainted the

jury's continued deliberations, and we can discern no basis on which such an argument could be made. Because the record does not reflect that the trial court's polling of the jury affected Lopez's substantial rights, error, if any, by the trial court in polling the jury does not constitute reversible error. Lopez's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

PUBLISH