# PD-0800&0801-15

PD-0800&0801-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/29/2015 5:21:30 PM
Accepted 7/1/2015 1:36:55 PM
ABEL ACOSTA
CLERK

NO. PD-_____

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**Quinn Ford Jr., Appellant**
**v.**
**The State of Texas, Appellee**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\***

FROM THE COURT OF APPEALS

SECOND APPELLATE DISTRICT OF TEXAS

FORT WORTH, TEXAS

NO. 02-14-00176-CR, 02-14-00177-CR

TARRANT COUNTY
TRIAL COURT NO. 1267457, 1267459

FILED IN
COURT OF CRIMINAL APPEALS

July 1, 2015

ABEL ACOSTA, CLERK

R. Scott Walker
STATE BAR # 24004972
222 W. Exchange Avenue
Fort Worth, TX 76164
(817) 478-9999
(817) 977-0163 FACSIMILE
scott@lawyerwalker.com
Attorney for Appellant

## IDENTITY OF TRIAL JUDGE, PARTIES, AND COUNSEL

The following is a complete list of all parties, as well as the names and addresses of all counsel.

| | |
|---|---|
| Trial Judge: | Honorable Everett Young |
| Appellant: | Quinn Ford, Jr. |
| Trial Counsel: | Edward E. Castillo<br>Attorney at Law<br>2101 Moneda St.<br>Fort Worth, Texas 76117<br><br>Michael P. Garcia<br>Attorney at Law<br>6207 Airport Freeway<br>Fort Worth, Texas 76117 |
| Appellate Attorney for Appellant: | R. Scott Walker<br>Attorney at Law<br>222 W. Exchange Avenue<br>Fort Worth, Texas 76164 |
| Appellee: | The State of Texas |
| Trial Attorney for Appellee: | Colin T. McLaughlin, &<br>James R. Hudson<br>Tarrant County Assistant<br>District Attorneys<br>401 W. Belknap,<br>Fort Worth, Texas 76196 |
| Appellate Attorney for Appellee: | Sharen Wilson<br>Tarrant County<br>District Attorney<br>401 W. Belknap,<br>Fort Worth, Texas 76196 |

**TABLE OF CONTENTS**

PAGE

IDENTITY OF TRIAL JUDGE, PARTIES, AND COUNSEL . . 2

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . 3

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . 4

STATEMENT DECLINING ORAL ARGUMENT. . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . 5

STATEMENT OF PROCEDURAL HISTORY OF THE CASE. . . 6

QUESTIONS PRESENTED . . . . . . . . . . . . . . . 5

ARGUMENT QUESTION NUMBER ONE (THE TRIAL JUDGE

ERRED BY ADMITTING EVIDENCE OF A PRIOR BAD ACT). 6

ARGUMENT QUESTION NUMBER TWO  (The evidence was

insufficient to prove that Appellant was guilty

of evading arrest in a vehicle) . . . . . . . . 14

PRAYER . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . 18

# INDEX OF AUTHORITIES

## CASES

*Jackson v. State,*
    17 S.W.3d 664 (Tex.Crim.App., 2000) . . . .  15

*Jackson v. Virginia,*
    443 U.S. 307 (1979) . . . . . . . . . . . . . 15

*Montgomery v. State,*
    810 S.W.2d 372 (Tex.Crim.App. 1990)  . 6, 7, 10

*State v. Beechum,*
    582 F.2d 898 (US Ct. App. 5th Cir. 1978).12, 13

## STATUTES

*Texas Penal Code,*
    *§38.04* (Vernon 1984) . . . . . . . . . . . . 15

*Texas Rules of Evidence,*
    *§403* (Vernon 1984) . . . . . . . . . . . 12, 16

## STATEMENT DECLINING ORAL ARGUMENT

Oral argument of this case is not requested on behalf of Appellant, and is hereby waived.

All references to Texas statutes, rules, etc. are references to the latest edition published by West Publishing Company, unless otherwise indicated.

QUINN FORD, JR., Appellant-Applying for Review

V.

THE STATE OF TEXAS, Appellee

**\*\*\*\*\*\*\*\*\*\*\*\***

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

**\*\*\*\*\*\*\*\*\*\*\*\***

TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:

## <u>STATEMENT OF THE CASE</u>

This appeal has resulted from a criminal prosecution for aggravated assault and evading arrest. On April 21, 2014, Appellant, Quinn Ford, Jr., pled not guilty to the second degree offense of aggravated assault and the third degree offense of evading arrest. On April 23, 2014, after evidence was presented, the jury found Quinn Ford, Jr. guilty. The jury set punishment at 12 years confinement. (C.R., Vol.1 p.56).

**STATEMENT OF PROCEDURAL HISTORY OF THE CASE**

The Court of Appeals rendered its decision and delivered its written non-published memorandum opinion on May 28, 2015.  The deadline for filing a Petition for Discretionary Review is June 29, 2015.

**QUESTIONS PRESENTED**

(1) Whether the trial judge erred by admitting evidence of a prior bad act.  R.R. Vol. 3, p. 9-39.

(2) Whether the evidence was legally sufficient to prove that Quinn Ford was guilty of evading arrest in a vehicle.  R.R. Vol. 3, p. 114-123.

**ARGUMENT QUESTION NUMBER ONE**

**APPLICABLE LAW:**  The trial judge erred by admitting evidence of a prior bad act.  Finding prior bad act evidence to be relevant is the first step in a trial court's determination of whether the evidence should be admitted before the jury. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Montgomery v. State, 810

6

S.W.2d 372, 375 (Tex.Crim.App. 1990). If the trial court finds that the evidence is relevant, then the trial court is to consider whether the evidence is admissible under Tex. Rules of Evidence 403. If the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, the evidence is to be excluded. Montgomery v. State, 810 S.W.2d 372, 377 (Tex.Crim.App. 1990).

## Analysis

The Court of Appeals opinion states that evidence showing that the Complainant "fled to SafeHaven" could not have constituted a prior bad act of Appellant separate and apart from the threats that allegedly were made at the time Complainant went to SafeHaven, and that such evidence could not have harmed Appellant. Neither of these propositions is supported by the record.

The trial judge clearly erred by admitting evidence of a prior bad act. Immediately prior to trial, Defense Counsel presented three oral motions in limine, the third of which related to any prior

7

bad acts of Appellant that may be offered in the guilt/innocence phase of trial.  Counsel for the State responded by asking to make an offer of proof.  The prosecutor stated that he intended to solicit testimony from Ms. Ford that three days prior to the offense, she had moved from the home, where she and Mr. Ford lived, to 'SafeHaven,' due to domestic problems in the home, without specifically stating the nature of the domestic problems.  As noted by Defense Counsel, it is common knowledge that 'SafeHaven' is a home for battered women.  (R.R. Vol. 3, p. 12, lines 9-10). There is no doubt that allowing the testimony would make it clear to the jury that Ms. Ford was a battered woman and that Mr. Ford had assaulted her in some way about three days prior to the incident in question.  The fact that the prosecutor brought this up in response to Defense Counsel's Motion in Limine on prior bad acts indicates that even the prosecutor believed it was evidence of a prior bad act.  During the discussion on the Motion in Limine, Defense Counsel objected on relevance

grounds, (R.R. Vol. 3, p. 12, lines 14-18), 404(b) grounds, (R.R. Vol. 3, p. 10, lines 1-3), and 403 grounds, (R.R. Vol. 3, p. 12, lines 11-13).  During the trial, when the evidence was presented, Defense Counsel renewed his objection and was given a running objection by the trial judge.  (R.R. Vol. 3, p. 39, lines 1-7).

After the discussion on the oral Motion in Limine, the trial judge ruled that he would allow the State to solicit testimony that, due to a domestic situation, Ms. Ford had moved to 'SafeHaven,' in effect, overruling Defense Counsel's motion.  Therefore, the evidence indicating that Mr. Ford assaulted his wife three days prior to the incident in question was allowed into evidence.  The ruling was erroneous.  It should also be noted that the prosecution went beyond the judge's ruling by stating multiple times, in front of the jury, that Ms. Ford **fled** to 'SafeHaven.'  (R.R. Vol. 3, p. 39, lines 9-10), (R.R. Vol. 4, p.38, Lines 22-23).  At one point, Ms. Ford and the prosecutor even referred to

'SafeHaven' as **_the shelter_**.  (R.R. Vol. 3, p. 50, line 23-25).

Saying Ms. Ford 'fled,' instead of moved, is even a stronger implication that Quinn Ford must have assaulted Ms. Ford in some way.  There is no doubt that these statements constituted evidence of a prior bad act.

As previously mentioned, Defense Counsel objected on relevance grounds. (R.R. Vol. 3, p. 12, lines 14-18).  Ms. Ford moved to 'SafeHaven' three days prior to the incident in question.  Therefore, the assault that caused her to move happened at least three days prior to the incident in question. The only relevance would be to show bad character of the defendant and that he acted in conformity therewith on the day of the offense.   However, any evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant.  Montgomery v. State, 810 S.W.2d 372, 375 (Tex.Crim.App. 1990).  The assaultive behavior that

is implicit in the use of the word 'SafeHaven,' would certainly make it more likely that Mr. Ford was guilty of the Aggravated Assault offense that allegedly occurred three days later. Therefore, Appellate Counsel concedes that the evidence was legally relevant. In fact, it is so relevant that it is very likely that without the evidence, Quinn Ford would have been found not guilty.

The State may argue that the contested evidence is actually contextual same transaction evidence. However, the evidence in question is not contextual same transaction evidence. As pointed out by Defense Counsel (R.R. Vol. 3, p. 12, lines 5-13), that argument simply does not hold water. The wife could have simply stated that she had moved out of the house, without mentioning 'SafeHaven.' The evidence was not in any way necessary to put the events in context. The trial judge abused his discretion by allowing the 'SafeHaven' language.

Also, Defense Counsel objected to the evidence under Rule 403. (R.R. Vol. 3, p. 12, lines 11-13).

11

Rule 403 States:

> Although relevant, evidence may be excluded if
> its probative value is substantially outweighed
> by the danger of unfair prejudice, confusion of
> the issues, or misleading the jury, or by
> considerations of undue delay, or needless
> presentation of cumulative evidence.   TRE 403.

The probative value which is compared to the unfair prejudice is the probative value that relates to the permissible purpose.  United States v. Beechum 582 F.2d 898, 914 (US Ct. App. 5th Cir. 1978).  In this case, the permissible purpose is to put the events on the day of the offense in context.  The prosecution argued that the 'SafeHaven' language was necessary to put the events in context, and without the language, it would not make any sense to the jury about what was going on.  (R.R. Vol. 3, p. 10-11).  Again, this argument is absurd.  Ms. Ford could say that she moved out three days earlier without mentioning 'SafeHaven.'  That would make perfect sense.  Therefore, the probative value of the 'SafeHaven' language is miniscule at best. In contrast, the danger of unfair prejudice is enormous.  Telling the jury that Quinn Ford

12

committed an offense against the same victim three days earlier is extremely prejudicial. The Fifth Circuit pointed out in Beechum that one of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged, but for the extrinsic offense. The opinion further states that this danger is particularly great when the extrinsic activity was not the subject of a conviction, and the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged. United States v. Beechum 582 F.2d 898, 914 (US Ct. App. 5th Circuit, 1978). The concerns in Beechum outline precisely the unfair prejudice created in the instant case by using the 'SafeHaven' language. Also, the reason the evidence is relevant in the first place is that evidence of a domestic offense against the same victim three days before the charged offense certainly makes the jury believe it is more likely that Quinn Ford committed the offense in which he is charged. The prejudice is

13

certainly unfair and greatly outweighs the miniscule probative value. The trial judge erred in admitting the evidence. For these same reasons, it is obvious the error was harmful. It is very possible the jury would have voted not guilty had this evidence been excluded.

## ARGUMENT QUESTION NUMBER TWO

**APPLICABLE LAW:** (legal sufficiency): The evidence was legally insufficient to prove that Quinn Ford was guilty of evading arrest in a vehicle. In general, the test for determining legal sufficiency requires the Appellate Court to review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime 'beyond a reasonable doubt.' *Jackson v. Virginia,* 443 U.S. 307, 319, (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Crim.App. 2000).

In order for one to be convicted of evading arrest, he or she must intentionally flee from a

14

person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him.  (Texas Penal Code §38.04)  There is no definition of 'flee' in the Texas Penal Code, but the commonly used definition is *to try to escape by running away.*

## ANALYSIS

The Court of Appeals opinion states that while there is very little law that delineates what does or does not constitute "intentionally" fleeing from a peace officer, it does not appear that speed is a consideration in making the determination.  Speed, as well as all the other facts relating to the incident should certainly be considered when determining whether a person "intentionally" flees from a peace officer.  Any and all cases that hold otherwise should be overruled.  This area of the law certainly needs clarification from this Honorable Court.

The evidenc, in the instant case was legally insufficient to establish that Quinn Ford was guilty of evading arrest or detention.  The

15

evidence showed that when officers attempted to stop the vehicle, Mr. Ford, at a reasonable rate of speed, drove around the block and stopped his vehicle in his driveway.  He immediately told police that he did so in order to prevent his car from being towed.  (R.R. Vol. 3, p. 118-123).  The statute requires that a defendant must intentionally flee from officers.  Quinn did not intentionally flee.  He simply drove around the block, stopped, and told the officers that he did not want to get his car towed.  He did not violate the statute.  When the prosecutor asked the police officer what his opinion was as to whether Mr. Ford was attempting to flee, his response was, "I mean, I feel that, you know, with us being uniformed police officers having a marked vehicle and we were trying to – we were trying to effect a stop and he continued to drive away from us, that he was evading."  (R.R. Vol. 3, p. 114).  It is obvious that the officer believed that if the detainee does not stop immediately, he or she is guilty of evading.  That is not the law.  The person must be

16

fleeing or trying to get away.  The evidence is insufficient to show that Quinn Ford was guilty of evading arrest in a vehicle.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Quinn Ford, Jr., Appellant, prays that this petition be granted, the case be reversed, or for whatever other relief he has shown himself entitled.

Respectfully Submitted,
s/Scott Walker
_____
By: Scott Walker
Attorney for Appellant
222 W. Exchange Avenue
Fort Worth, Texas 76164
(817) 478-9999
(817) 977-0163 FAX
scott@lawyerwalker.com
State Bar No. 24004972

## CERTIFICATE OF SERVICE

A copy of this petition was served by first class mail to the Office of Criminal District Attorney, Tarrant County Courthouse, 401 W. Belknap, Fort Worth, Texas 76196 and to the State Prosecuting Attorney at P.O. Box 12405, Austin, Texas 78711 on the 30th day of June, 2015.

/s/ R. Scott Walker
R. SCOTT WALKER

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the length requirements as set forth by the Texas Rules of Appellate Procedure in that this document contains 2734 words, and that the document is in 14 point type.

/s/ R. Scott Walker
R. SCOTT WALKER

18

# APPENDIX



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00176-CR
### NO. 02-14-00177-CR

QUINN FORD, JR.                                                APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1267457D, 1267459D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Quinn Ford, Jr. of aggravated assault and evading arrest or detention using a vehicle, charged in separate indictments. The jury assessed his punishment at twelve years' and two years' confinement, respectively. The trial court sentenced him accordingly. Appellant brings two

---

[1]*See* Tex. R. App. P. 47.4.

issues on appeal, challenging the admission of evidence of a prior bad act and the sufficiency of the evidence of evading arrest in a vehicle. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgments.

**Brief Facts**

Complainant testified that Appellant, who was her husband at the time of the incident, intentionally struck her vehicle, with her inside it, with his car while traveling at speeds of up to forty miles per hour. Three days before the incident, she had moved from their home to SafeHaven because of marital issues. She did not take the couple's three children with her when she left, and after a couple of days, Appellant dropped the children off with Complainant's sister. Appellant had dropped the children off with only the clothes they were wearing, so when he called Complainant the next day to tell her to come to the house to pick up the children's clothes or he would destroy them, she agreed to do so.

Complainant asked Appellant to put the clothes outside, but he refused, so she went inside the house upon her arrival. The clothes were not inside the house, and Appellant explained that he had wanted her to come inside the house so they could talk. He hugged her, put her on his lap, and spoke of reconciliation. They eventually engaged in sexual intercourse, and when Appellant said he was hungry, Complainant drove the two of them to a pizza restaurant.

Complainant testified that she was afraid of Appellant. She believed that she could not get away from Appellant and tried to appease him, agreeing to

2

reconcile with him. When they returned to the house, Appellant became angry when she refused to get out of the car. He punched and kicked the dashboard, cracked the windshield with a Snapple bottle, and threatened to kill her. She turned off the ignition and pretended to get out of the car. Appellant got out of the car, and when he closed his door, Complainant locked the doors and started the car. As she was trying to drive away, Appellant ran around the car and threw the bottle at the driver's side window, shattering the bottle. Complainant drove off, and Appellant chased her in his car, trying to block her car with his. Rather than going to SafeHaven, she went to the police station, calling ahead so officers could meet her in the parking lot. As she pulled into the parking lot, Appellant swerved around her, hit her car on the passenger side, and fled. The police broadcast instructions for other officers to go after him, assuming that he was heading home.

Two officers saw Appellant near his house. They followed him and engaged their lights and sirens. Appellant continued driving until he reached his house and pulled into his driveway. They placed him under arrest, and he told the officers that he had not stopped because he did not want his car towed.

**Evidence of Prior Bad Act**

In his first issue, Appellant argues that the trial court reversibly erred by admitting evidence that Complainant was living at SafeHaven, a shelter for battered women, because that was evidence of a prior bad act. He raised his

objection in a motion in limine, which was overruled, and again when the evidence was offered. He was also granted a running objection to the evidence.

In support of his argument, he points out that the prosecutor stated "multiple times, in front of the jury, that [Complainant] fled to 'SafeHaven.'" Appellant also notes that the prosecutor referred to "SafeHaven" as "the shelter." Appellant concedes that the evidence was relevant, although at trial one of the objections was to relevance, but argues that the State provided no rule 404(b) notice of the extraneous bad act, although he had made a proper request before trial. He also concedes that there is no such request in the record. He also candidly concedes that the State provided "timely notice prior to trial that it would offer evidence of the prior threats which allegedly occurred three days before the incident in question." He argues, however, that although the State's notice lists twenty-eight separate prior bad acts, "there is no notice of the evidence offered at trial, being that [Complainant] fled to 'SafeHaven' three days prior to the incident in question."

We frankly cannot understand how Complainant's fleeing to SafeHaven three days before the events alleged as the offenses at bar is a bad act of Appellant separate and apart from the threats that allegedly were made at the time Complainant went to SafeHaven. Even if it could be construed as a separate bad act of Appellant and even if we found its admission erroneous, we fail to understand how Appellant could have been harmed. Appellant does not allege constitutional error. We would therefore apply the standard of review

4

required for nonconstitutional error, disregarding it if it did not affect Appellant's substantial rights.[2] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[3] Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect."[4] Complainant testified that she had left her home and her children because she was afraid of Appellant. She testified to the prior acts of misconduct of which Appellant had notice. If the trial court erred by admitting evidence that Complainant went to SafeHaven, a shelter, which we do not hold, then any such error would have been harmless beyond a reasonable doubt in light of the evidence admitted showing Complainant's fear of Appellant and his prior acts of misconduct. We overrule Appellant's first issue.

**Evading Arrest or Detention**

In his second issue, Appellant argues that the evidence is insufficient to prove his guilt of evading arrest with a vehicle because he did not flee. He alleges that he merely drove around the block and pulled into his driveway so his

---

[2]*See* Tex. R. App. P. 44.2(b); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

[3]*King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

[4]*Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

car would not be towed. A person commits the offense of evading arrest or detention with a vehicle if, using a vehicle, he "intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."[5] There is very little law on this issue that arises from similar facts. Our sister courts have held that failing to submit to an officer's show of authority is sufficient to satisfy the elements of evading arrest.[6] Speed apparently is not a consideration in determining whether a person is guilty of evading arrest. Even crawling away from a police officer has been seen to constitute evading arrest.[7]

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[8] Applying the appropriate standard of review, we hold that the jury as trier of fact rationally could have found the elements of the crime of evading arrest or detention with the use of a vehicle beyond a reasonable doubt if they believed

---

[5]Tex. Penal Code Ann. § 38.04 (West Supp. 2014).

[6]See *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.); *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.); *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.).

[7]*Leos v. State*, 880 S.W.2d 180, 184 (Tex. App.—Corpus Christi 1994, no pet.).

[8]*Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2789 (1979).

6

that, after the officers engaged their lights and sirens, Appellant continued driving instead of pulling over at the earliest possible moment on the residential street. We overrule Appellant's second issue.

**Conclusion**

Having overruled Appellant's two issues, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 28, 2015

7



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-14-00176-CR

| | | |
|---|---|---|
| Quinn Ford, Jr. | § | From the 297th District Court |
| | § | of Tarrant County (1267457D) |
| v. | § | May 28, 2015 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Lee Ann Dauphinot_____
Justice Lee Ann Dauphinot