

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00513-CR

Edward **HOUSTON**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2014CR7827
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  June 15, 2016

AFFIRMED

Edward Houston was convicted by a jury of evading arrest or detention in a motor vehicle.

On appeal, Houston contends: (1) the evidence is insufficient to support the jury's finding that he

intentionally fled from a person he knew was a peace officer who was attempting to detain him;

and (2) the trial court erred in overruling his objection to the inclusion of a voluntary intoxication

instruction in the jury charge.  We affirm the trial court's judgment.

**BACKGROUND**

The only witness who testified at trial was the arresting officer, Sergeant Frank Bellino. Sergeant Bellino testified he was in uniform in a marked patrol car when dispatch received several calls regarding a reckless, erratic driver of an 18-wheel tractor trailer. One caller stated the driver went off the roadway.

Sergeant Bellino parked his car on the shoulder of the highway ahead of the location reported by the callers. While he was parked, several drivers flashed their lights at him to get his attention. One tractor trailer pulled in front of Sergeant Bellino, and the driver exited the vehicle to point out the tractor trailer being driven erratically.

Sergeant Bellino observed the tractor trailer being driven in the fast lane of the two-lane divided highway. The tractor trailer was traveling 30 to 45 miles per hour, and the speed limit was 65 or 70 miles per hour. As soon as Sergeant Bellino saw the vehicle, he activated his emergency lights and merged into traffic. Sergeant Bellino observed the tractor trailer weaving to the left across the rumble stripe, into the grass, and then back across to the slow lane of traffic. Although the other drivers on the highway were staying behind Sergeant Bellino or moving out of his path, the tractor trailer continued down the highway weaving between the shoulder of the highway and the slow lane. Because the tractor trailer showed no signs of stopping, Sergeant Bellino also activated his siren a few minutes after he activated his emergency lights and maneuvered his patrol car to a location where he could see the outside mirror of the tractor trailer. Sergeant Bellino stated the driver of the tractor trailer would have to see his lights in the mirror. Once Sergeant Bellino activated his siren, all the other vehicles moved off the highway.

Upon reaching an exit, the tractor trailer exited and slowed considerably. Another driver that was exiting pulled his car into the grass to avoid being struck. The access road was a two-way road, and the tractor trailer was driving in the wrong lane into oncoming traffic. The tractor

trailer stopped before a four-way stop sign at the intersection of the access road and the cross street, and Sergeant Bellino exited his patrol car to make contact with the driver. After Sergeant Bellino exited his patrol car, the tractor trailer driver drove off through the four-way stop without braking and reentered the highway.

After the tractor trailer reentered the highway, the tractor trailer continued traveling between 40 to 45 miles per hour and continued weaving from the shoulder to the slow lane of traffic. Sergeant Bellino continued to maneuver his patrol car with its lights and siren activated to ensure the driver of the tractor trailer saw him while the other vehicles on the highway pulled over in response to the lights and siren. At the next exit, the tractor trailer veered right at the last possible second and exited, hitting a concrete median. The tractor trailer appeared to be preparing to stop, so Sergeant Bellino put his patrol car in park and waited. After a brief time, the tractor trailer again accelerated, went through the intersection of the access road and the cross street, and reentered the highway.

After reentering the highway for the third time, the tractor trailer was again traveling at the same speed while weaving in and out of the lane. At the next exit, the tractor trailer again exited and came to a stop by a truck stop. As Sergeant Bellino approached the cab of the tractor trailer, the driver threw open the door. Sergeant Bellino drew his weapon because the driver was bug-eyed, sweating, and looked agitated. The driver's pants were unbuttoned, he did not have on any shoes, and had on only one sock. Sergeant Bellino believed the driver was on some type of drugs and ordered him to the ground.

Once Sergeant Bellino had the driver prone on the ground, the driver started hysterically laughing. Another officer arrived on the scene and arrested the driver, later identified to be Houston, for DWI. Sergeant Bellino estimated he followed Houston for four to five miles and for approximately 15 to 20 minutes. Sergeant Bellino stated his emergency lights and siren remained

activated until Houston finally stopped the third time, and every other driver on the highway was reacting to the emergency lights and siren by pulling off the roadway. Sergeant Bellino further testified he never previously had a problem pulling over a tractor trailer.

On cross-examination, although Sergeant Bellino could not positively state Houston saw his emergency lights, Sergeant Bellino believed Houston saw the lights. When asked whether Houston's tractor trailer might have been so noisy Houston did not hear the siren or whether Houston may have believed Sergeant Bellino was attempting to stop another vehicle, Sergeant Bellino responded "[a]nything is possible."

After hearing the evidence, the jury convicted Houston of evading arrest or detention in a motor vehicle. Houston elected for the trial court to assess his sentence, and the trial court sentenced Houston to four years' imprisonment and a $1,500 fine. Houston appeals.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Houston asserts the evidence is legally insufficient to support the jury's finding that Houston knew Sergeant Bellino was a peace officer who was attempting to arrest or detain him. Houston contends he did not know he was being pursued until he exited the highway the third time. Houston also contends a tractor trailer would never attempt to evade detention or arrest on a congested highway because "a large truck at that location could hardly get lost in the crowd." Houston further notes he never drove faster than 45 miles per hour which is not consistent with evasion. Houston concludes the logical inference from the evidence was that he did not see or hear Sergeant Bellino's patrol car until he exited the highway the third time.

In evaluating the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, any rational trier of fact could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

*Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Under this standard, we defer to the jury's weighing of the evidence and its assessment of credibility. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). We also defer to the jury's ability to "'draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19). In drawing inferences from the evidence, the jury "may use common sense and apply common knowledge, observation, and experience." *Alexander v. State*, 229 S.W.3d 731, 740 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. stricken)).

A person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him. TEX. PENAL CODE ANN. § 38.04(a) (West Supp. 2015). Fleeing is "'anything less than prompt compliance with an officer's direction to stop.'" *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (quoting *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). Although speed, distance, and duration of pursuit are factors in determining whether a defendant intentionally fled, "no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.); *see also Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.). "The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law." *Mayfield*, 219 S.W.3d at 541. "'[F]leeing slowly is still fleeing.'" *Lopez*, 415 S.W.3d at 497 (quoting *Horne*, 228 S.W.3d at 446).

In this case, the evidence established Sergeant Bellino followed Houston for four to five miles with his patrol car's lights and siren activated. All of the other vehicles on the highway responded to the lights and siren except Houston, and Sergeant Bellino had never previously

encountered a driver of a tractor trailer being unable to see his patrol car's lights or hear its siren. At the first exit, Houston exited the highway and slowed to a stop but then accelerated and reentered the highway after Sergeant Bellino exited his patrol car. Although Houston suggests he would not attempt to evade detention or arrest in a tractor trailer because he "could hardly get lost in the crowd," the statute does not require effectual fleeing. *Mayfield*, 219 S.W.3d at 541. Furthermore, although Houston asserts his speed was not consistent with evasion, "'fleeing slowly is still fleeing.'" *Lopez*, 415 S.W.3d at 497 (quoting *Horne*, 228 S.W.3d at 446). Accordingly, we hold a jury could rationally infer from the evidence presented that Houston was intentionally fleeing from Sergeant Bellino because Houston knew Sergeant Bellino was a peace officer who was attempting to lawfully arrest or detain him. Therefore, the evidence is legally sufficient to support Houston's conviction, and Houston's first issue is overruled.

## VOLUNTARY INTOXICATION INSTRUCTION

In his second issue, Houston contends the trial court erred in overruling his objection to the inclusion of a voluntary intoxication instruction in the jury charge. Houston contends the only evidence that he was intoxicated is mere speculation, and no evidence would have led the jury to find "the speculated intoxication in any way excused [his] actions." Houston argues his defense was that he did not know he was being pursued, "not that he was intoxicated and the intoxication excused him from the law."

"Appellate review of claims of jury-charge error first involves a determination of whether the charge was erroneous and, if it was, then second, an appellate court conducts a harm analysis, with the standard of review for harm being dependent on whether error was preserved for appeal." *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). A trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The function of a jury charge is not merely to avoid

misleading or confusing the jury, but to lead and to prevent confusion." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (internal citations omitted).

Section 8.04(a) of the Texas Penal Code provides "[v]oluntary intoxication does not constitute a defense to the commission of a crime." TEX. PENAL CODE ANN. § 8.04(a) (West 2011). Consistent with section 8.04(a), the jury in this case was instructed as follows:

> You are instructed that under our law, voluntary intoxication does not constitute a defense to the commission of a crime. For the purpose of this law, intoxication means a disturbance of mental or physical capacity resulting from the voluntary introduction of any substance into the body.

A defendant need not rely upon intoxication as a defense before the trial court may instruct the jury regarding voluntary intoxication. *Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994); *Huerta v. State*, 933 S.W.2d 648, 650 (Tex. App.—San Antonio 1996, no pet.). Instead, an instruction on voluntary intoxication "is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Sakil*, 287 S.W.3d at 26. Furthermore, the evidence need not unequivocally establish the defendant was intoxicated before such an instruction is proper. *Id*. at 27. An instruction is proper when there is "sufficient evidence from which a juror could conclude that intoxication somehow excused [the defendant's] actions." *Id*.

In the instant case, Sergeant Bellino testified he believed Houston was on some type of drug based on his appearance and behavior upon exiting the tractor trailer. Furthermore, Sergeant Bellino stated Houston was arrested for DWI after another officer conducted field sobriety tests. This evidence could have led a jury to conclude Houston's drug use or intoxication somehow excused his actions. *See id*. Therefore, the trial court did not err in overruling Houston's objection and including the voluntary intoxication instruction in the charge. *See Taylor*, 885 S.W.2d at 158; *Huerta*, 933 S.W.2d at 650. Houston's second issue is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH