**Opinion issued July 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

**NO. 01-15-00291-CR**

**NO. 01-15-00292-CR**

**NO. 01-15-00293-CR**

_____

**DANIEL SHERMAN BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Case No. 1414895, 1422157, 1422158

## O P I N I O N

Appellant Daniel Sherman Brown was charged by indictment with three offenses: being a felon in possession of a firearm, possession of a controlled substance, and evading arrest in a motor vehicle. The cases were consolidated for

trial, and a jury found Brown guilty of all three charges. Brown was sentenced to 20 years' confinement for being a felon in possession of a firearm, 10 years' confinement for possession of a controlled substance, and 90 years' confinement for evading arrest in a motor vehicle. On appeal, Brown contends that insufficient evidence supports his conviction for evading arrest and that he was entitled to a mistrial following allegedly improper closing argument by the State. We affirm.

**Background**

On January 19, 2014, Officers M. Glover and M. Jacobs of the Houston Police Department ("HPD") were working an approved extra job at the 44 Club in northeast Houston. As explained by the officers at trial, the phrase "approved extra job" describes a situation wherein a private entity or individual employs off-duty police officers. Throughout that evening at the 44 Club, both officers were in uniform with their HPD badges visible.

Officers Glover and Jacobs interacted with Brown three times that evening before the conduct giving rise to the charged offenses occurred. Officer Glover testified that he and Officer Jacobs first encountered Brown after receiving a report from the club owner that Brown had a weapon inside the club. Officers Glover and Jacobs testified that they identified themselves as police officers, asked Brown to step outside the club to talk with them, patted him down to check for weapons, and, finding none, told Brown he could go back into the club. The officers

testified that, shortly thereafter, Brown got into an altercation with another male attendee. Again, the officers asked Brown to step outside, and, because the altercation had not turned physical, the officers gave Brown a warning. Both officers testified that they explained to Brown that he would not be allowed to stay at the club if he caused any further issues.

Officer Glover testified that, within minutes of their allowing Brown back into the club, Brown was involved in an altercation with a female attendee. The officers were told that Brown had grabbed a woman by her head or hair. The officers testified that they told Brown to leave the premises. Officer Jacobs testified that Brown was further informed that he would be arrested for trespassing if he returned. Both officers testified that Brown was upset about being asked to leave the club. Officer Glover described Brown as belligerent. He further testified that, in addition to calling him a variety of names, Brown teased him that he thought he could do anything he wanted because he was a police officer and that he must have become a police officer because he was picked on in high school. Brown further teased that he made more money than the officers and drove a nicer car—specifically, a Cadillac. Officer Glover testified that Brown was so intoxicated that they felt he could not safely drive himself home; instead, they waited with Brown for someone to give him a ride. Officer Glover testified that, after someone drove Brown away, the officers went back inside the club. Officer

Jacobs testified that, throughout these initial three contacts with Brown, Brown did not appear to have any difficulty hearing or comprehending the officers' instructions.

Officer Glover testified that, sometime later, the parking attendant came into the club and reported to him that someone was in the parking lot with a gun. Both officers went outside to investigate. Officer Glover testified that he noticed a red Cadillac in the parking lot near the front door and driving towards the exit. The officers testified that they followed the vehicle on foot as it left the parking lot. After exiting the parking lot, the vehicle stopped and Brown got out of the driver's seat. Officer Jacobs testified that he confidently identified Brown as he got out of the Cadillac not only because of his recent interactions with Brown, but also because Brown was wearing a distinctively colored yellow shirt that night.

According to testimony from both officers, Brown stepped out of his car with a shotgun in his hand and walked towards the trunk of the car. Officer Glover testified that he pulled his gun, got behind a truck 20 to 25 yards from Brown, and began ordering Brown to drop the weapon. Officer Jacobs testified that he also drew his gun and sought cover behind a vehicle. Officer Glover testified that he was continuously yelling to Brown to "Drop the shotgun, get down on the ground, drop the shotgun, drop the shotgun." Officer Jacobs testified that he observed Officer Glover making such commands and he himself did not also begin making

commands in order to avoid confusing Brown. Officer Glover testified that Brown did not respond to his commands and instead "just stood there looking at [the officers]." Officer Jacobs testified that there was no way Brown did not know the officers were present. A woman exited from the passenger side of the Cadillac, walked to Brown at the rear of the vehicle, and began telling Brown to get back into the car and put down the shotgun. Officer Glover called for assistance over his HPD radio. Despite Officer Glover's continued demands to put down the weapon and get on the ground, neither Brown nor his passenger complied. Instead, they got back into the Cadillac and drove away. Officer Glover testified that Brown drove away at a high rate of speed, at which point he relayed a description of the vehicle and direction of travel to responding patrol units.

As HPD's Officer D. Davila was responding to the scene, he had already heard details about the suspect vehicle. Officer Davila testified that, on his way to Club 44, he believed he saw the red Cadillac driving at a high rate of speed in the opposite direction. Officer Davila tried to turn around and locate the vehicle, but he was unable find it and continued to the 44 Club. Once he arrived at the club, Officer Davila received information from Officer Glover and began searching the area for the red Cadillac. Officer Davila testified that, as he was driving around looking for the red Cadillac, he was dispatched to a location within two miles of the 44 Club where someone was reportedly discharging a firearm. When Officer

5

Davila arrived, he saw Brown's red Cadillac parked at a slant in the driveway with the front two tires on the grass. Officer Davila testified that he got out of his patrol car, drew his weapon, and ordered the person inside the car to get out. Officer Davila testified that a woman got out of the car, but did not respond to instructions to lie down, instead calling out for Brown by name. Within a minute, Brown came out of the house yelling "What's going on, I didn't do nothing." Officer Davila testified that he ordered Brown to get on the ground, and Brown complied.

Both suspects were arrested and searched. Officer Davila testified that officers found in Brown's left pocket a substance that Mariam Kane, a chemist with the Houston Forensic Science Center, tested and testified was 0.58 grams of cocaine.

**Sufficiency of the Evidence**

In his second issue, Brown contends that insufficient evidence supports his conviction for evading arrest because the State did not adduce evidence showing that Brown knew Officers Glover and Jacobs were attempting to detain or arrest him at the 44 Club.

## A. Standard of Review

An appellate court reviews legal and factual sufficiency challenges using the same standard of review. *See Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011). "Under this standard, evidence is insufficient to support a conviction

if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479. The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

An appellate court "determine[s] whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17

(Tex. Crim. App. 2007)). A court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). "An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence." *Gonzalez*, 337 S.W.3d at 479.

## B. Applicable Law

Under Texas law, a person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE § 38.04(a). If "the actor uses a vehicle . . . while the actor is in flight," the offense becomes a third-degree felony. *Id.* § 38.04(b)(2)(A); *see also Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.) (holding that punishment scheme of section 38.04 provides that evading arrest is a third degree felony if actor uses vehicle in flight). "If proven by the evidence, a refusal to comply with a lawful order, knowing the order came from a police officer, constitutes the offense of evading detention." *Green v. State*, 892 S.W.2d

8

217, 218 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("A person commits a crime under Section 38.04 only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority.").

**C.     Analysis**

To sustain a conviction, the State was required to prove beyond a reasonable doubt that, while using a vehicle, Brown intentionally fled from a person he knew was a peace officer attempting to lawfully arrest or detain him. TEX. PENAL CODE § 38.04(a); *see also Redwine*, 305 S.W.3d at 362. On appeal, Brown contends there was insufficient evidence from which the jury could conclude beyond a reasonable doubt that he intentionally fled knowing that Officers Glover and Jacobs were attempting to arrest or detain him.

Officers Glover and Jacobs both testified that they were wearing HPD uniforms and their HPD badges were visible while they were working at the 44 Club. Both officers recounted three interactions with Brown at the 44 Club in the hours leading up to their standoff. In the course of those three interactions, the officers identified themselves to Brown as police officers. Officer Glover also testified that Brown teased him about being a police officer, further supporting an inference that Brown knew the uniformed men were peace officers. We conclude

9

that such evidence, viewed in the light most favorable to the verdict, would enable a rational trier of fact to conclude beyond a reasonable doubt that Brown knew Officers Glover and Jacobs were peace officers.

There was also sufficient evidence from which the jury could have found beyond a reasonable doubt that Brown knew Officers Glover and Jacobs were attempting to arrest or detain him. First, the evidence showed that, by the time Officers Glover and Jacobs began yelling at Brown to drop his gun and get on the ground, Brown had already been warned by the officers that he would be arrested for trespassing should he return to the 44 Club that night.

Second, the jury could infer from the evidence that Brown heard Officer Glover's repeated commands. Officer Glover testified that he was within 20 to 25 yards of Brown, with his gun drawn, as he repeatedly ordered Brown to drop the shotgun and get on the ground. Officer Glover testified that Brown did not respond to his commands and instead "just stood there looking at [the officers]." Ultimately, rather than respond to the officers' lawful orders, Brown got back into his Cadillac and drove away at what Officer Glover described as a high rate of speed.

Third, the jury could infer that Brown's intent to evade arrest was not merely fleeting or momentary. Officer Davila, who was dispatched to the scene, testified that he saw what he believed to be Brown's red Cadillac driving in the opposite

10

direction at a high rate of speed as he approached the 44 Club. He also testified that he later found Brown's car parked crookedly and with its tires partially off the driveway, from which the jury could infer that Brown remained hurried even upon arriving there. Based on such evidence, viewed in the light most favorable to the verdict, and reasonable inferences therefrom, a rational trier of fact could conclude beyond a reasonable doubt that Brown knew peace officers were attempting to detain him and he intentionally fled. *See Green*, 892 S.W.2d at 218 (evidence that defendant ran to front door of house after officer instructed defendant to approach patrol car sufficient to support conviction for evading detention).

Notwithstanding such evidence, Brown relies on *Griego v. State*, 345 S.W.3d 742 (Tex. App.—Amarillo 2011, no pet.), to argue that insufficient evidence supports his conviction because there was no pursuit of his vehicle, no one attempted to "chase or subdue" him, and no one told Brown to "stop" or informed his that he was "under arrest." *Id.* at 751. In *Griego*, patrol officers attempted to pull over a driver following reports that he had a gun. *Id.* at 746, 749. At trial, the officers conceded that the driver might not have seen their patrol car behind him. *Id.* at 751. An officer's dash cam video showed that officers were only directly behind the driver for a matter of seconds before the driver pulled into a driveway, got out of his car holding a beer, and casually walked towards a house—suggesting he had not noticed the pursuing officers. *Id.* at 753. Based on

11

such evidence, the court concluded that insufficient evidence supported a conviction for evading arrest while driving a vehicle because a rational jury could reasonably doubt whether the driver knew the officers were attempting to arrest or detain him while he was driving his vehicle. *Id.* at 754.

This case is different from *Griego*. Unlike in *Griego*, Brown had been warned that he would be arrested for trespassing should he return to the 44 Club. When Brown did return, the officers repeatedly and from a short distance ordered Brown to drop his shotgun and get on the ground. Brown just stood there making eye contact with the officers until his passenger suggested that he leave. There was no such evidence in *Griego*.

We overrule Brown's second issue.

## Closing Argument

In his first issue, Brown contends that the trial court erred in not granting a mistrial following purportedly impermissible closing argument by the State. The State responds that (1) Brown failed to preserve any such error for review, (2) even assuming otherwise, the trial court correctly did not grant a mistrial because the State's argument was a reasonable deduction from the evidence, and (3) even if improper, the trial court did not abuse its discretion by not ordering a mistrial.

**A. Applicable Law**

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991) (en banc)). Proper jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex. Crim. App. 1973).

If a trial judge sustains an objection to improper jury argument, the defendant must request an instruction to disregard and move for a mistrial in order to preserve error. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998) (en banc). When a party seeks and receives relief in response to an objection or request for an instruction to disregard and does not thereafter move for mistrial, he preserves nothing for review. *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002); *see also Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) ("[A] defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it.").

**B.    Analysis**

During closing argument, the State reminded the jury that Brown had been given multiple chances and been warned by the officers before he left the 44 Club and returned in his red Cadillac with a shotgun.  The prosecutor noted that Brown had bragged about making more money than the officers and then posited about the reason Brown returned to the club: "You know what?  I think the defendant wanted to show off.  I think he showed back up just to show off.  I don't know.  To come back —."  Defense counsel interrupted, "Objection, your Honor.  That's speculation."  The trial court responded, "Sustained. Jurors, disregard," and the State continued closing argument.

"To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his objections to jury argument." *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).  Here, however, defense counsel did not request a mistrial.  Because Brown sought and received relief in response to his objection and did not then move for a mistrial, nothing is preserved for our review.  *Id.* at 699; *Mathis*, 67 S.W.3d at 926–27; *Cockrell*, 933 S.W.2d at 89 (holding that, to preserve issue for appeal, defendant must pursue his objections to jury argument to an adverse ruling).

Accordingly, we overrule Brown's first issue.

14

**Conclusion**

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Brown, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).