

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00357-CR

Carl Robert **TOLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 8517
Honorable Albert D. Pattillo, III, Judge Presiding

Opinion by:   Lori Massey Brissette, Justice

Sitting:       Lori I. Valenzuela, Justice
               Lori Massey Brissette, Justice
               H. Todd McCray, Justice

Delivered and Filed: August 20, 2025

AFFIRMED

This case involves two questions. First, we must determine whether the evidence presented at trial is legally sufficient to support the jury's finding that appellant Carl Robert Toler intentionally and knowingly evaded arrest. Second, we must decide whether the trial court erred by not defining "knew" in the jury charge. Based upon our review of the law and the record, we affirm the trial court's judgment.

## BACKGROUND

A jury found Toler guilty of evading arrest or detention with a vehicle. The trial court sentenced him to fifty years in Texas Department of Criminal Justice Institutional Division and imposed a $10,000 fine.[1] Toler moved for a new trial, which was denied. On appeal, Toler argues that (1) the evidence was insufficient to convict him of intentionally and knowingly evading arrest; (2) the trial court erred in overruling his motion for directed verdict;[2] and (3) the trial court erred by failing to define the term "knew" in the jury charge.

## SUFFICIENCY OF THE EVIDENCE

Toler argues the State failed to prove he intentionally and knowingly evaded arrest beyond a reasonable doubt. Specifically, he asserts the evidence is insufficient to prove he was objectively aware that he was fleeing from a police officer who was trying to detain him. *See* TEX. PEN. CODE § 38.04(a) (A person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him.").

### A. Standard of Review and Applicable Law

In our review of the "sufficiency of the evidence, we consider all the admitted evidence in the light most favorable to the verdict." *Day v. State*, 614 S.W.3d 121, 127 (Tex. Crim. App. 2020). The jury is the sole judge of witness's testimonial credibility "and the weight to assign to that testimony." *Id*. It may "believe all, some, or none of a witness's testimony." *Id*. If "the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict

---

[1] Because Toler has two prior final felony convictions—burglary of a habitation in 1999 and possession of a controlled substance in 2011—he was eligible for enhanced sentencing under Texas Penal Code § 12.42 as a habitual offender. *See* TEX. PEN. CODE § 12.42. Although a fifty-year sentence for evading arrest is certainly noteworthy, Toler does not challenge his sentence. We, therefore, cannot address it.

[2] Because "[w]e treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence," we analyze the first two issues under the same standard of review. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

and therefore defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is legally sufficient if "a rational jury could find each essential element of the offense beyond a reasonable doubt." *Day*, 614 S.W.3d at 126. Evidence is insufficient if: "(1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere 'modicum' of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged." *Brown v. State*, 498 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Gonzalez v. State*, 337 S.W.3d 473, 479 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd)). In a sufficiency review, "[d]irect and circumstantial evidence are treated equally." *Clayton*, 235 S.W.3d at 778.

The statute sets forth the elements of evading arrest as: "(1) a person; (2) intentionally flees; (3) from a peace officer"; (4) "with knowledge he is a peace officer"; "(5) with knowledge the peace officer . . . is attempting to arrest or detain the defendant, and (6) the attempted arrest or detention is lawful." *Nicholson v. State*, 682 S.W.3d 238, 245 (Tex. Crim. App. 2024). Each of the facts do not need to "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PEN. CODE § 6.03(a). "Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant." *Guevara*, 152 S.W.3d at 50. Evading arrest

focuses on circumstances surrounding the defendant's conduct rather than its results. *Riggs v. State*, 482 S.W.3d 270, 274 (Tex. App.—Waco 2015, pet. ref'd). In considering whether a defendant has an intent to evade arrest, "[t]he length and speed of the chase are factors . . . but are not determinative by themselves." *Baines v. State*, 418 S.W.3d 663, 670 (Tex. App.—Texarkana 2010, pet. ref'd) (holding low-speed chase around single city block provided sufficient evidence to support defendant intended to flee).

For the "fleeing" portion of the elements, "[t]he gravamen of the offense is the evasion of an arrest, not the evasion of a police officer." *Jackson v. State*, 690 S.W.2d 686, 688 (Tex. App.—Houston [1st Dist.] 1985), aff'd, 718 S.W.2d 724 (Tex. Crim. App. 1986). "Proof that an officer in a vehicle is attempting to arrest or detain a person generally consists of the officer displaying authority by the use of overhead/emergency lights and siren." *Duvall v. State*, 367 S.W.3d 509, 513 (Tex. App.—Texarkana 2012, pet. ref'd); *see, e.g.*, *Lopez v. State*, 415 S.W.3d 495, 497 (Tex. App.—San Antonio 2013, no pet.) (holding jury could reasonably infer defendant was aware officers were attempting to detain him from officers' testimony lights and siren were activated for six-tenths of mile and one and a half minutes).

Turning to the knowledge element, "[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct if "he is aware of the nature of his conduct or that the circumstances exist." TEX. PEN. CODE § 6.03(b). "The statute does not require the defendant's knowledge that the attempted arrest or detention was lawful." *Nicholson*, 682 S.W.3d at 245. It is enough that the defendant recognizes the individual as a peace officer. *Id*. at 242. In other words, "[a] person commits [evading arrest] only if he knows a police officer is attempting to arrest him but nevertheless refuses to yield to a police show of authority." *Redwine v. State*, 305 S.W.3d 360, 362 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "If

proven by the evidence, a refusal to comply with a lawful order, knowing the order came from a police officer, constitutes the offense of evading detention." *Brown*, 498 S.W.3d at 671 (quoting *Green v. State*, 892 S.W.2d 217, 218 (Tex. App.—Texarkana 1995, pet. ref'd)).

### B. Applicable Facts

On March 10, 2022, complainant Bryan Stewart reported that a person's vehicle described as a white 2021 Dodge Challenger had been following his vehicle—a blue Porsche Cayenne—for an hour near East US Highway 290 and Vineyard Lane. Deputy Ryan Drexler of the Gillespie County Sheriff's Office testified during trial he was in a patrol vehicle and went to the area on Highway 290 identified by Stewart. There he encountered the suspicious vehicle. Deputy Drexler ran the license plate, which provided the vehicle was registered to Toler. He traveled past Toler's vehicle and observed the vehicle did not have a front license plate. *Id*.

Deputy Drexler initiated a "traffic stop" on Toler's vehicle and turned on the overhead lights of his patrol unit at the intersection of 290 East and Luckenbach Road. Toler initially "slowed down" but did not come to "a complete stop." Instead, Toler suddenly sped up and "took off," requiring Deputy Drexler to activate his siren and begin pursuing Toler. The patrol dash cam showed the pursuit lasted approximately eighteen minutes. During the pursuit on Highway 290, Toler "weave[d] in and out of lanes" and "[went] into oncoming traffic" at speeds reaching up to 130 miles per hour. Another officer tried to get in front of Toler to get him to stop but failed. Toler did not stop until the police officer used a tire deflation device to successfully spike his vehicle. The dash cam video showed Toler immediately raised his hands and laid face down on the ground after he was stopped. Deputy Drexler also testified Toler did not have a bad attitude and was, in fact, apologetic after he was arrested.

Toler testified he suffers from schizophrenia, which he described as "hearing voices and sometimes having a little bit of hallucination when people aren't there." He submitted as evidence an "assessment / plan" prepare by a nurse practitioner from Texas Provider Group. The plan, dated January 8, 2023—nearly a year after the incident in question—included a mental status exam, which provided Toler had no "delusions" but did have "auditory hallucinations." *Id.* It further provided he had "fair" judgment and insight. *Id.* He was also cognitively "oriented to situation, time, place, and person." *Id.* It further provided he had a "history of meth abuse." *Id.* Finally, it provided the "auditory hallucinations," flat affect, and apathy, were evidence of "F20.9: Schizophrenia, unspecified." *Id.* It is unclear from the plan when the schizophrenia diagnosis was first made, but nothing in the diagnosis proves Toler was suffering from a schizophrenic episode on the date of the incident. *Id.*

When asked about what happened on that day and why he initially followed a Porsche, Toler explained he "wasn't following a Porsche directly, more than there was somebody in front of [him] in traffic." Toler further testified that, on the day of his arrest, he was "hearing voices and people that weren't there," and he was a little bit confused about "where [he] was and what was going on around [him]." When asked about why he took off after he saw the lights and heard the sirens, he first explained he did not remember. He further testified that "as soon as [he] looked in the mirror and saw the officer," he began to slow down. Toler testified he was still hearing the voices while he was talking to the deputy after his arrest. He also testified he had no reason to run because he was legally able to drive, had nothing illegal in his possession, was not under the influence of alcohol or any illegal drugs or narcotics, and had no warrant for his arrest.

### C. Analysis

Toler argues that the State failed to prove beyond a reasonable doubt that he had the intent required for the evading arrest offense charged. He identifies the evidence related to his behaviors in the exhibits and argues he "had no idea who was pursuing him, no idea where he was, no idea what was happening around him, had voices telling him what to do, and had no logical reason to flee." Therefore, he contends the evidence negated the intent requirement of the evading arrest offense. Toler also argues that the State failed to prove his knowledge beyond a reasonable doubt. Specifically, Toler asserts that, due to his delusions, he did not know Deputy Drexler was a peace officer or that Deputy Drexler was trying to detain him. He states he was fleeing because he believed Deputy Drexler was trying to kill him.

Here, applying our standard of review, when Deputy Drexler first activated his lights in a marked patrol vehicle behind Toler, Toler initially slowed down but did not stop. He then drove very fast and would drive in the opposite lane whenever there were cars obstructing him. Toler continued driving at high speeds for eighteen minutes, crossed multiple lanes, and reached speeds of up to 130 miles per hour. The duration of this pursuit is sufficient to indicate that Toler knew the police were attempting to detain him and that he intended to evade arrest. *See Baines*, 418 S.W.3d at 670 (holding that low-speed chase around single city block provides sufficient evidence to support defendant intended to flee); *see also Smith v. State*, 483 S.W.3d 648, 654 (Tex. App.— Houston [14th Dist.] 2015, no pet.) (holding that defendant drove erratically, such as fluctuating his speed and changing lanes quickly, could lead a reasonable juror to conclude appellant knew police office was pursuing him and intent to flee).

Toler testified that as soon as he looked in the mirror and saw the officer, he started to slow down. But that occurred only after his car was spiked. The jury could have reasonably concluded

that he finally stopped only because the car was spiked and he risked losing control if he did not do so. Toler's actions of raising his hands immediately after exiting from his vehicle and then laying down on the ground also indicate that he knew the police officer was attempting to arrest him. *See Reyes v. State*, 465 S.W.3d 801, 806 (Tex. App.—Eastland 2015, pet. ref'd) (holding the appellant's act of putting his hands up and turning around to be handcuffed, along with other surrounding circumstances, sufficiently demonstrated his awareness of the arrest).

Toler argues that although Deputy Drexler used lights and sirens to attempt to detain him, the evidence merely established that he wanted to avoid whatever was behind him, citing *Redwine v. State*. 305 S.W.3d 360, 364 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (stating "appellant's professed desire simply to *avoid further contact* with deputies seen on the road" is not a concession that he "knew they were actually trying to arrest or detain him"). But the facts of *Redwine* are distinguishable. In *Redwine*, the police did not activate their vehicle's overhead lights because they hoped to conceal their intent to detain the defendant. *Id.* at 361. Therefore, the court held that the State failed to prove beyond a reasonable doubt that the defendant knew the police were attempting to arrest him. *Id.* at 368. However, in this case, Deputy Drexler activated the vehicle's lights at the beginning of the event. He also activated the siren when Toler refused to stop and suddenly sped up. Therefore, Toler's argument fails to negate his knowledge.

Toler argues that due to his delusions, he did not intend to evade arrest and did not know Deputy Drexler was a peace officer. Therefore, the State failed to prove intent and knowledge required for the offense beyond a reasonable doubt, citing *Ruffin v. State*. 270 S.W.3d 586, 588 (Tex. Crim. App. 2008) ("[B]oth lay and expert testimony of mental disease or defect that directly rebuts particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule"). But the facts of *Ruffin* are distinguishable. In *Ruffin*,

the defendant provided testimony from his family members, describing the defendant's condition over a long period before the events. *Id*. at 589–90. The defendant also provided expert testimony related to his mental state. *Id*. at 591. All of that evidence together could help a juror better understand the defendant's mental state.

However, in this case, Toler provided no evidence to corroborate his own testimony other than his care plan, which was assessed ten months after the event and which does not discuss his condition on the date in question. The care plan merely states he had a history of meth abuse and schizophrenia as evidenced by auditory hallucinations. But without additional detail, including whether such histories existed during the incident in question, such evidence is not sufficient to negate his knowledge or intent to evade arrest at the time of the crime. *See Henry v. State*, 466 S.W.3d 294, 299 (Tex. App.—Texarkana 2015), *aff'd on other grounds*, 509 S.W.3d 915 (Tex. Crim. App. 2016) (holding evidence of appellant's mental illness, when considered in conjunction with the sixteen-minute high-speed pursuit video, was insufficient to negate the requisite *mens rea* for evading arrest). While Toler did testify himself of his troubles that day, it is axiomatic that we cannot step into the shoes of the jury to reassess his credibility or the weight to be given his testimony. *See Jackson v. State*, 160 S.W.3d 568 (Tex. Crim. App. 2005).

As in *Jackson*, Toler does not position his diminished capacity as an affirmative defense. *Id.* at 574 ("[P]resenting evidence of mental illness does not then allow the defense to argue that the defendant is absolutely incapable i.e., does not have the capacity to intentionally or knowingly perform an act."). Instead, he presents a "failure-of-proof defense in which [he] claims that the State failed to prove that [he] had the required state of mind at the time of the offense." *Id.* Ultimately, as in *Jackson*, the jury hears the evidence relating to his mental illness and how it may have impacted him on the date of the offense, determines the credibility of the testimony offered

and the weight it should be given, and then determines whether the elements of the offense have been proven sufficient to find him guilty of the offense charged. *Id*.

Accordingly, the jury in this case could have resolved the conflict in the officer's testimony and Toler's by choosing to not believe Toler's account, giving no weight to his testimony, and crediting instead the officer's testimony. The jury could also have given little weight to the care plan by finding any such auditory hallucinations did not inhibit Toler's ability to either see or hear the lights and sirens and form the requisite intent and knowledge for the crime of evading arrest on the date in question. *See Lopez*, 415 S.W.3d at 497; *Duvall*, 367 S.W.3d at 513. Based on evidence admitted at trial, a jury could reasonably infer Toler knew a peace officer was attempting to arrest him and he intended to evade arrest. *See Lopez*, 415 S.W.3d at 497. In other words, Toler's actions provide a sufficient basis for the jury to reasonably infer that he had both the knowledge and the intent to evade arrest. *See Guevara*, 152 S.W.3d at 51.

### EVADING ARREST JURY-CHARGE

Toler argues the trial court's jury charge failed to define the term "knew," which, according to him, requires the defendant had knowledge that (a) he was fleeing from a peace officer and (b) the officer was lawfully attempting to arrest him. He further argues that the omission of this definition caused egregious harm by depriving him of the right to have the jury properly assess each element of the offense.

#### A. Standard of Review and Applicable Law

We review jury charge error claims under the two-pronged test set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985*). See, e.g.*, *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022). A reviewing court must first "determine if there is jury charge error." *Campbell*, 664 S.W.3d at 245. If the reviewing court determines there is error, it must then conduct

a harm analysis. *Id*. Because Toler failed to timely object at trial, we must determine whether the record shows "egregious harm." *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022) (quoting *Almanza*, 686 S.W.2d at 171).

"Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one." *Id*. Jury charge error "is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory." *Id*. "A finding of egregious harm must be based on 'actual harm rather than theoretical harm.'" *Id*. (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). "[C]ourts are required to review the relevant portions of the entire record to determine whether [a defendant] suffered actual harm, as opposed to theoretical harm, as a result of the error." *State v. Ambrose*, 487 S.W.3d 587, 598 (Tex. Crim. App. 2016) (alterations in original) (quoting *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016)). "Neither party bears the burden to show harm." *Alcoser*, 663 S.W.3d at 165. "In determining whether charge error resulted in egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence; (3) the final arguments of the parties; and (4) any other relevant information revealed by the trial court as a whole." *Reed v. State*, 680 S.W.3d 620, 626 (Tex. Crim. App. 2023).

**B. Analysis**

**1. Is the Jury Charge Erroneous? And Was Toler Egregiously Harmed?**

**a. The Jury Charge**

The jury charge provided, in relevant part:

I.

A. Our law provides that a person commits the offense of evading arrest or detention with a vehicle if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him and the person uses a vehicle while the person is in flight.

II.

A. Peace officer means a sheriff and their deputies.

B. Vehicle means a device that can be used to transport or draw persons or property on a highway.

III.

A. A person acts intentionally or with intent, with respect to the nature of his conduct when it is his conscious objective or desire to engage in the conduct.

IV.

A. Now, if you find from the evidence beyond a reasonable doubt that on or about the 10th day of March, 2022, in Gillespie County, Texas, the Defendant, Carl Robert Toler, did then and there, while using a motor vehicle, intentionally flee from Ryan Drexler, a person the Defendant knew was a peace officer who was attempting lawfully to arrest or detain the Defendant, then you will find the Defendant guilty of the offense of evading arrest or detention with a vehicle as charged in the indictment.

B. Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

A jury "charge is meant to inform the jury of the applicable law and how to apply it to the facts of the case." *Alcoser*, 663 S.W.3d at 164–65 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). "Abstract paragraphs 'serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge,' and application paragraphs apply the 'pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations.'" *Id*. (quoting *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012)). "Reversible error in the giving of an abstract instruction generally occurs only when the instruction is an incorrect or misleading statement of a law that 'the jury must understand in order to implement the commands of the application paragraph,' and the 'failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge.'" *Id*.

(quoting *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), overruled on other grounds by *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)).

As stated above, there are two elements related to knowledge for a lawful evading arrest jury charge under *Nicholson*: "(1) knowledge the person conducting the arrest is a peace officer; (2) knowledge the peace officer or special investigator is attempting to arrest or detain the defendant." *Nicholson*, 682 S.W.3d at 245. The jury charge in this case first defines the offense of evading arrest in Section I. It introduces the meaning of "peace officer," "vehicle," and intent in section II and III. Toler did not challenge these elements but argues that the jury charge fails to define the term "knew." Because the defense counsel did not object to the jury charge at trial, we must therefore determine whether the purported jury charge was erroneous and, if so, whether it constituted egregious harm. *See Alcoser*, 663 S.W.3d at 165.

Assuming for the sake of argument that the jury charge erroneously failed to define "knew" in the jury charge, we cannot conclude any such failure constituted egregious harm. *Cf. Nicholson*, 682 S.W.3d at 245 (concluding appellant egregiously harmed when jury charge failed to include element appellant knew officer was attempting to arrest him). "[W]hen the statutory definition is not included in the charge, it is assumed the jury would consider the commonly understood meaning in its deliberations." *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983). "[T]he mental state 'knowingly' or 'with knowledge' as it relates to the actor's action with respect to the nature of his conduct or the existing circumstances is not substantially different from the common usage and understanding of those terms." *Mathis v. State*, 858 S.W.2d 621, 622 (Tex. App.—Fort Worth 1993, pet. ref'd). Here, the term "know" was used to described whether Toler was aware that there was a police officer and that the officer was attempting to arrest him. Because the definition of "know" in the charged offense concerns the actor's awareness of the nature of his

conduct or the surrounding circumstances, it is not materially different from the common meaning of the term. *See Id*. Therefore, even without a specific definition in the jury charge, a reasonable juror could understand the meaning of "know."

Further, the lack of a definition of the term "knew" did not cause Toler egregious harm. The jury charge as a whole adequately conveyed the knowledge requirement to the jury. In fact, as written, the jury charge goes beyond the required knowledge element to provide that Toler needed to know the arrest was lawful, which is more than *Nicholson* requires. Accordingly, this factor weighs against a finding of egregious harm. *See Alcoser*, 663 S.W.3d at 167 (holding that use of incorrect definition of "knowing" element and lack of instruction that jury was required to acquit if it found that defendant acted in self-defense, did not result in egregious harm because the appellant's testimony provided sufficient evidence and other instructions adequately informed the jury).[3]

### b. The State of the Evidence

Based on the evidence as described above, a reasonable juror could have inferred from the video, such as Toler suddenly speeding up after the police officer approached him and continuing to drive in a reckless way, that Toler had the knowledge that there was a police officer and that the police officer was attempting to arrest him. Therefore, the jury charge was unlikely to mislead the jury in assessing whether he had the requisite knowledge. The state of evidence in this case can hardly support a finding of egregious harm. *See Riggs*, 482 S.W.3d at 277 (holding trial court's

---

[3] *See also Marshall v. State*, 479 S.W.3d 840, 844-45 (Tex. Crim. App. 2016) (holding that erroneous omission of reference to "bodily injury" in application portion of jury instruction on felonious assault against a family member did not egregiously harm defendant because error neither deprived appellant of any valuable rights nor vitally affected his defensive theory); *see also Riggs v. State*, 482 S.W.3d 270, 276 (Tex. App.—Waco 2015, pet. ref'd) (holding that trial court's failure to properly tailor definition of "knowingly" to conduct elements of evading arrest did not result in egregious harm because, when viewed in factual context, it was apparent which conduct element applied to which element of offense); *see also Mathis*, 858 S.W.2d at 622 (holding that, in forgery offense, trial court's failure to define "knowingly" did not constitute egregious harm because the common usage of "knowingly" closely reflects statutory definition).

error in using non-statutory definition for evading arrest did not result in egregious harm because officer's dash camera showed defendant had several opportunities to stop and defendant sped up after officer activated his overhead lights).

### c. Final Arguments of the Parties

Toler argues that the State mentioned only that he "knew" what he was doing on that day and did not further explain the knowledge element of the charge, leaving the jury with the impression that some general knowledge is all that was required, rather than the specific knowledge required by the statute.

When we review whether the final arguments of the parties cause egregious harm, "we look to whether any statements made by the State, appellant, or the court during the trial exacerbated or ameliorated error in the charge." *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). During closing argument, the State briefly mentioned the knowledge requirement, explaining that based on Toler's criminal history, he was familiar with these kinds of situations. Therefore, he knew what was happening. These were the lone references to knowledge in the State's closing argument. Moreover, defense counsel also separately emphasized the knowledge requirement explaining: "Did the State prove beyond a reasonable doubt the defendant knew that it was a peace officer behind him?" It is therefore hard to find that the State's brief reference to knowledge exacerbated any error in the charge. Therefore, this element weighs against finding egregious harm. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (holding that absence of any statements by parties or court that added to charge error does not support a finding of egregious harm). Based on the evidence as described above, Toler had the requisite intent and knowledge. Therefore, we do not find that any other relevant information here

constitutes egregious harm. Thus, considering all four factors, the jury charge in this case did not result in egregious harm.

**CONCLUSION**

Accordingly, the trial court's judgment is affirmed.

Lori Massey Brissette, Justice

DO NOT PUBLISH